### Alma J. Bonds v. The State.

No. 2574.   Decided October 15, 1913.

**1.—Murder—Misconduct of Jury—Allusion to Defendant's Failure to Testify.**

Where, upon a trial of murder and a conviction of murder in the second degree, it became a contested issue whether the jury had alluded to defendant's failure to testify, the court should have permitted an oral examination of each and all the jurors upon this question, and a refusal to do so was reversible error.

**2.—Same—Evidence—Moral Turpitude.**

Upon trial of murder, testimony as to a charge of theft against one of defendant's witnesses when he was a boy twelve years old should not have been admitted, as it was too remote in time, etc. However, the question was not properly presented on appeal.

**3.—Same—Charge of Court—Words and Phrases.**

Where the use of the word, "defendant," was twice used in the court's charge in place of "deceased," and it appeared from the record that the same was a mere clerical error and could not have misled the jury, there was no reversible error, although the court is reminded to be more careful in writing his charge.

**4.—Same—Character and Disposition of Deceased—Charge of Court.**

Where, upon trial of murder, the evidence showed that deceased had been a violent and dangerous man, etc., the court in submitting the issue of self-defense should have charged that the jury might consider defendant's knowledge of the character and disposition of deceased. Following Messer v. State, 43 Texas Crim. Rep., 97.

Appeal from the District Court of Robertson.   Tried below before the Hon. J. C. Scott.

Appeal from a conviction of murder in the second degree; penalty, seven years imprisonment in the penitentiary.

The opinion states the case.

*J. L. Goodman* and *H. S. Morehead* and *Perry & Woods,* for appellant.—On question of admitting testimony of moral turpitude: Wusnig v. State, 33 Texas, 652; Parker v. State, 20 Texas Crim. App., 451; Carr v. State, 24 id., 562; Gardiner v. State, 33 Texas, 692; Keith v. State, 33 Texas Crim. Rep., 341; Davis v. State, 52 Texas Crim. Rep., 629, 108 S. W. Rep., 667; Robinson v. State, 156 S. W. Rep., 212; Thomas v. State, 63 Texas Crim. Rep., 98, 138 S. W. Rep., 1018; Winn v. State, 54 Texas Crim. Rep., 538, 113 S. W. Rep., 918.

On question of using wrong word in court's charge: Goolsby v. State,

59 Texas Crim. Rep., 528, 129 S. W. Rep., 624; Roberts v. State, 156 S. W. Rep., 651; Clampitt v. State, 3 Texas Crim. App., 638.

On question of character of deceased: Spangler v. State, 42 Texas Crim. Rep., 233; Messer v. State, 43 id., 97; Cornelius v. State, 54 id., 156; Hickey v. State, 62 Texas Crim. Rep., 568, 138 S. W. Rep., 1051.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was prosecuted for and convicted of murder in the second degree, and his punishment assessed at seven years confinement in the penitentiary.

The most serious question in this case is presented in regard to the alleged misconduct of the jury. R. E. Griffin, a member of the jury, in an affidavit attached to the motion for a new trial, among other things, says: "That Juror A. J. Smith said to him, 'If there has been anything like the defendant's wife testified to, why did they not bring the defendant himself on the stand to testify to same?' or words to that effect; that said juror, A. J. Smith, also said that there was Wesley Bonds, the brother of defendant, and they also failed to have him testify, and that he knew the reason why they did not let him testify, and that it was because he was such a liar, like the defendant's wife, that they would not believe anything he said about it. Affiant further says, that at several other times he heard certain of the jurors discuss the defendant's failure to testify but that he was not close enough to them to tell just which of the jurors made such remarks, as several of them were talking at the time, and could not tell which ones made such remarks."

Lee Brantner, a member of the jury, in an affidavit, also says: "A. J. Smith, when the testimony of the defendant's wife was being discussed by the jury, remarked, that the testimony of the defendant's wife was false, and commenting further upon the testimony of the defendant's wife, the said juror, A. J. Smith, remarked that if the testimony of the defendant's wife had been true, the defendant himself would have been placed upon the stand to tell the same facts, which his wife had testified to; that thereupon affiant, who was also a member of the jury, called the juror Smith's attention to the fact, that the judge in his charge had directed that the jury should not consider the failure of the defendant to testify in his own behalf, and that same should not be referred to by any of the jurors in their deliberations; that some juror then remarked that the defendant's brother, Wesley Bonds, was also there at the time of the shooting, and that had it been as testified to by the defendant's wife, he, the said Wesley Bonds, would also have been placed on the stand, and the same juror then added, 'But old Wesley is such a liar that nobody would have believed him, and that's why they did not put him up,' or words of similar import."

These affidavits were attached to the motion for a new trial. The State contested the motion, and filed the affidavit of A. J. Smith, who states that no such things occurred, and he made no such statements.

The affidavits of the other nine jurymen are also filed, in which they state they heard no such statements or conversations, and if this was all we would conclude that this presented no ground for reversal of the case. But the record before us discloses the following proceedings had on the hearing of the motion:

"Be it remembered, that in the above entitled and numbered cause, when the defendant's amended motion for a new trial came on to be heard and considered on the 26th day of February, A. D. 1913, that in obedience to an order of the court previously made and entered, in the matter of the consideration of said motion for a new trial, all jurors who sat in the trial of said case, appeared before the court, and with the defendant present in open court, the consideration of said motion was taken up and the ground of said motion for a new trial, which alleged misconduct of the jury in receiving additional and unsworn testimony after they had retired to deliberate on their verdict, and in commenting upon and considering, as a circumstance against defendant, his failure to testify as a witness in his own behalf, the following proceedings were had. The defendant in support of his motion on these grounds produced and read in open court the ex parte affidavits of the jurors, R. E. Griffin, Lee Brantner and J. D. Smith; that while the same were being read and presented to the court, the juror, R. E. Griffin, came forward and stated that he desired to make certain corrections in his affidavit; and that said affidavit as a whole was not true; that the same was untrue in certain particulars only, but true in others; that thereupon the court demanded of said juror to make such corrections of his said affidavit as he desired and thought necessary; that, in this connection the juror Lee Brantner also desired to make certain corrections in his affidavit, which were demanded by the court, and the same were made; that the said juror Smith, when his affidavit was read, demanded the privilege of making corrections to the same, which request was granted by the court, and affidavit corrected in the presence of this court; that in this connection while the affidavit of the juror R. E. Griffin was being read, the trial judge became aroused and in an angry and threatening manner, in the presence of the jury, demanded that said juror be 'brought into court,' and that his affidavit be read to said juror, and in said juror's presence, stating that he 'wanted to get at the bottom of this thing,' and that fearful charges had been made; that he 'did not know who to stigmatize in the matter, but that some one or the other would suffer'; this language and conduct of the court could have had no effect other than to freighten and intimidate said jurors.

"In this connection, with this bill of exceptions, defendant shows, that on the morning of the 26th of February, A. D. 1913, before the district attorney had taken the affidavits of any of the jurors, the defendant's counsel stated to the district attorney that defendant would be willing to withdraw all the affidavits he had, if the district attorney would take no affidavits, and that the jurors be taken one by one and placed on the stand, sworn by the court, and examined and cross-

examined in the presence of the court, on the question of their misconduct. This request was refused by the district attorney, and on the morning of the 27th of February, while said motion was still under consideration, defendant made the same request of the court in the presence of the district attorney, stating that so far as known to him, the practice of the court in the past had been in all criminal cases, where the question of misconduct of the jury was raised, to bring the jurors before the court, and then in the presence of the court, and the defendant, to examine and cross-examine said jurors as to the alleged acts of misconduct, and that so believing and knowing the practice of the court in the past, the defendant relied upon his doing the same in this case; for the reason, and for the further reason, that the court on the evening before, when the court was adjourned, stated that on the following morning testimony of jurors and other witnesses would be heard upon the issue, so believing and relying upon this statement of the court; defendant did not take or attempt to get, or take counter affidavits from any of the ten jurors who made affidavits to the district attorney, in support and furtherance of this part of this bill of exception.

"Be it also remembered, 'that defendant stated to the court, that the juror Moss was then present, and that said juror on the evening before, towit, February 26, 1913, after court had adjourned, and after he had signed an affidavit prepared by the district attorney, and stated, that said attorney had only shown in his affidavit the points that were favorable to the State; that the defendant's failure to testify was in fact mentioned and that if placed upon the stand he would tell what he knew about it, and defendant then requested the court to place said juror on the stand and allow him to tell matters as they actually occurred. Be it also remembered, that defendant requested the court on this issue to allow him to cross-examine the jurors who had made affidavits to the district attorney, for the further reason, that if so allowed he could and would lay predicates to impeach certain of said jurors and would impeach them by contradictory statements by said jurors made to different persons, and especially to W. C. Perry, W. D. Hardy and E. E. Brazelle, all of which last named persons were then and there tendered as witnesses on this issue, which said request was refused by the court.

"Be it further remembered in this connection, that it is agreed by the court and the district attorney, that defendant requested the privilege of having one member of his counsel present when said jurors were examined by the district attorney, which was refused by said attorney; and further, that defendant requested the said district attorney and the court to place each juror on the stand and allow them to testify on the issue raised in the motion for a new trial, which said request was refused by the court.

"Be it further remembered, that defendant requested the court, that in order that the jurors Brantner and Griffin be not discredited before the court, that they and also each other member of the jury be placed on the stand as witnesses, in order that on cross-examination said jurors

can be made to corroborate the jurors Brantner and Griffin. The act of the court in using the language that he did, in refusing to allow defendant the privilege of cross-examining said jurors, and in refusing to compel the district attorney to allow one member of defendant's counsel to be present when their said respective affidavits were taken, could have but resulted in only grave and serious injuries to defendant.

> Perry & Woods,
> J. L. Goodman,
> H. S. Morehead,
> Attorneys for Defendant.

"The above bill of exceptions is qualified by this statement of the court: That on this, the 27th day of February, A. D. 1913, on which said motion is still being considered by the court, the court stated to defendant's counsel, that he would hear from the jurors Griffin and Brantner verbally or by such additional affidavits, and that he would hear by the jurors or by any other witnesses, that defendant's counsel wished to introduce by affidavits or supplemental affidavits."

We have set this bill out in full, and it is seen by its recitals that the court refused to permit the jurors to be orally examined on their oaths. Why he did not do so we can not understand. The record shows they were all in attendance on court, and Mr. Griffin and Mr. Smith were permitted to file corrected affidavits, but Mr. Griffin reiterates that the above statements were made to him by Mr. A. J. Smith, correcting the first affidavit only in some other minor matters. Other affidavits are incorporated in the record showing a most earnest and solicitous effort on the part of defendant's counsel to introduce each and every juryman and examine them in open court, but they were denied this privilege. It is also stated that juryman Moss, one of the jurymen from whom the State secured an affidavit, stated, "That the district attorney had only shown in his affidavit the points that were favorable to the State; that the defendant's failure to testify was in fact mentioned, and if placed on the stand he would tell all about it," and defendant requested the privilege of placing this juror on the stand, but was denied the privilege, and in an affidavit it is stated that jurors Griffin, Brantner and Moss offered to take the stand and testify, and challenged the State to place all the jury on the stand that the truth or falsity of their statement might be established.

With the record in this condition, we think the court should have permitted an oral examination of each and all the jurors. If the court had done so, and found as a fact that no such proceeding had taken place, we would have given great weight to his finding, but it appears he neither heard the evidence, nor permitted it to be adduced that it might be incorporated in the record. The affidavits of the jurors Griffin and Brantner raised a serious question, and when the defendant proposed if he was permitted to place the jurors on the witness stand, if they adhered to the statement in the affidavits filed by the district

attorney, he could and would impeach them by showing contradictory statements made by such jurors to different persons, naming Perry, Hardy and Brazelle, he ought at least have been permitted to adduce such testimony on whether or not the jury discussed the failure of defendant to testify.

As to the testimony of Whit Welch about having been charged with theft when he was a boy twelve years old, this testimony ought not to have been admitted, as it was remote in time, and especially is this true as to him having been charged with another offense, when no complaint had ever been filed. But these questions are not properly presented, and we only refer to them so that these errors may not occur on another trial.

The using of the word "defendant" twice in the charge, where the court evidently means deceased, we think, was a mere clerical error, and taking the charge as a whole, evidently would not mislead the jury. Of course, as contended by appellant, it was error to use the word "defendant" where the word deceased should have occurred, and the court, we are sure, will be more careful in writing his charge on another trial, but this would not be such error, in the connection in which the words are used, that we would feel authorized to reverse the case because thereof.

Again, it is contended that as the record discloses that the reputation of deceased was that of being a violent and dangerous man, that he had killed one man and assaulted another with the intent to murder him, and convicted of both these offenses; that he habitually carried a pistol, and that these facts were known to defendant, the court in submitting the issue of self-defense should have instructed the jury, in viewing the circumstances as they reasonably appeared to defendant, that they might consider defendant's knowledge of the character and disposition of the deceased. In this character of case this appears to be the law of this State. (Branch's Criminal Law, sec. 475; Messer v. State, 43 Texas Crim. Rep., 97.) Of course, every case must be presented on the facts adduced on the trial, and when there is no evidence as to the character and reputation of deceased it is error to give this charge, but when there is testimony that he is a dangerous and violent man, that he habitually carried arms; had killed other men, which facts were known to defendant, the evidence is introduced for the purpose of aiding the jury in determining how the matter really appeared to defendant at the time, and it is proper to so instruct the jury.

We have referred to these minor matters so they will not occur on another trial, for while we would not feel authorized to reverse the case because of them, yet, as we will reverse the case on account of the alleged misconduct of the jury in discussing the failure of defendant to testify, and the refusal of the court to hear evidence thereon, we have mentioned them.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*